UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS F. KENNETH,                                          **DECISION**
                                                                          **and ORDER**
                                        Plaintiff,
                                                                          **03-CV-521F**
                    v.
                                                                          **(Consent)**
NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

                                        Defendant.

_____

APPEARANCES:              CLAYTON & BERGEVIN
                                     Attorneys for Plaintiff
                                     H. JAMES CLAYTON, of Counsel
                                     665 Main Street
                                     Niagara Falls, New York  14301

                                     MARK D. GROSSMAN, ESQ.
                                     Attorney for Plaintiff
                                     710 Fourth Street
                                     Niagara Falls, New York    14301

                                     MURA & STORM, PLLC
                                     Attorneys for Defendant
                                     SCOTT D. STORM, of Counsel
                                     930 Rand Building
                                     14 Lafayette Square
                                     Buffalo, New York 14203

**JURISDICTION**

The parties to this action consented to proceed before the undersigned.  The

matter is presently before the court on Defendant's motions for summary judgment and

to dismiss, filed March 9, 2005.  (Doc. No. 15).

**BACKGROUND**

Plaintiff, Thomas F. Kenneth ("Plaintiff" or "Kenneth"), commenced this declaratory action on March 7, 2003 in New York Supreme Court, Niagara County, seeking declaratory judgment against Nationwide Mutual Fire Insurance Company ("Nationwide" or "Defendant") establishing Plaintiff's right to payment from Defendant under a homeowners insurance policy issued to Plaintiff and his then wife, Shelley Kenneth, for Plaintiff's property losses resulting from a fire at their residence at 800 Meadowbrook Drive, City of North Tonawanda, New York, on March 10, 2001.  On July 9, 2003, Defendant removed the action based on diversity jurisdiction, and pleaded affirmative defenses including, *inter alia*, that Plaintiff caused the fire.

On March 9, 2005, Defendant filed the instant motion seeking summary judgment and dismissal of the Complaint, pursuant to Fed.R.Civ.P. 37 and 41(b) ("Rule 37" and "Rule 41")  (Doc. No. 15) ("Defendant's motion"), along with the Affirmation of Scott D. Storm, Esq. (Doc. No. 15)  ("Storm Affirmation"), a Memorandum of Law in Support of Defendant's Motion (Doc. No. 16) ("Defendant's Memorandum"), and a Statement of Facts (Doc. No. 17) ("Defendant's Statement of Facts") along with exhibits A - Z and AA - AG ("Defendant's Exh(s). __").  On March 22, 2005, Plaintiff filed the Affidavit of Mark D. Grossman, Esq. (Doc. No. 20) ("Grossman Affidavit") in Opposition to Defendant's Motion, a Memorandum of Law Opposing to Defendant's Motion to Dismiss (Doc. No. 21) ("Plaintiff's Memorandum"), and a Statement of Facts (Doc. No. 22) ("Plaintiff's Statement of Facts").  Defendant filed its Reply to Plaintiff's Response (Doc. No. 23) ("Defendant's Reply") on May 6, 2005.  Oral argument was deemed unnecessary.   Based on the following, Defendant's motion is DENIED.

**FACTS**[1]

On March 10, 2001, a single-family residence located at 800 Meadowbrook Drive, North Tonawanda, New York ("the residence" or "the house"), owned by Plaintiff and his wife, Shelley Kenneth, was damaged by a fire.  Defendant's Statement of Facts ¶¶ 2-3.  Prior to the fire, on February 15, 2001, Shelley Kenneth informed the Plaintiff that she would seek a divorce.  Defendant's Statement of Facts ¶ 5 (Defendant's Exh. B at 15).  On March 10, 2001, Plaintiff telephoned his wife at the residence from a nearby payphone, approximately one-half mile from the house, at approximately 12:30 a.m., attempting to reconcile, but she did not answer the phone.  Defendant's Statement of Facts ¶ 10.  (Defendant's Exh. C at 54-56 and Defendant's Exh. B at 95-97).  Plaintiff then drove to the residence, where Shelley refused to reconcile and asked him to leave.  Defendant's Exhibit C at 56.  Later that day, at approximately 8:31 p.m., Plaintiff again called the residence, but no one answered.  Defendant's Fact Statement ¶ 10.

Mrs. Kenneth and her daughter were the first persons to discover the fire when they arrived at the residence in the evening at approximately 10:46 p.m. on March 10, 2001.  Defendant's Statement of Facts ¶¶ 3, 11.  At that time, Shelley Kenneth noticed that the living room light, which was connected to a timer, was off, however, she did not suspect that the residence had lost electric power because the automatic garage door worked and the garage light was on.  *Id.*  Before entering the house, Shelley Kenneth walked around its perimeter and noticed smoke coming from the rear of the residence,

---

[1] Taken from the pleadings and papers filed in the instant action.

causing her to telephone 911.  *Id.* (referring to Defendant's Exh. C at 61-63).

As of the filing of Defendant's motion, the cause of the fire at the residence remained "under investigation."  Defendant's Statement of Facts ¶ 13.  Nationwide's investigator determined that the fire started in a closet in the residence's basement under the staircase, and was not accidental.  *Id.*  The furnace, which was in close proximity to the location where the fire started, was ruled out as a source of the fire by the local utility company and an inspector retained by Nationwide.  *Id.*

Plaintiff and his wife's homeowners insurance policy, issued by Nationwide ("the policy"), which was in effect on March 10, 2001, provided, as relevant, that to recover under the policy for property loss, an insured must submit a signed, sworn proof of loss identifying (1) the time and cause of loss; (2) the interest the claimant and others have in the property, including all liens on the property; (3) other insurance that may cover the loss; (4) changes in title or occupancy of the property; (5) all damaged real property and estimates for repair; (6) the quantity, description, actual cash value and amount of loss of damaged personal property, attaching any bills and receipts that support these estimates; (7) "receipts for additional living expenses and records supporting the fair rental value loss"; and (8) an affidavit or other evidence stating the amount and cause of any credit card and related losses, within 60 days of Nationwide's request for this information.  Defendant's Exhibit G.

On May 18, 2001, Nationwide mailed to Plaintiff and Shelley Kenneth letters requesting the Kenneths to individually submit three signed, sworn proof of loss statements, "one each for their respective dwelling (Coverage A), personal property (Coverage C) and loss of use (Coverage D) claims."  Defendant's Exh. I.  The policy

required the Kenneths to submit the forms no later than 60 days from the demand.  *Id.*

The letter, sent to Plaintiff by certified mail was received by Plaintiff on May 22, 2001.

*Id.*  In response to Nationwide's request, Shelley Kenneth timely submitted completed

proof of loss forms for property loss and loss of use, which included documentation

supporting the amounts claimed.  Defendant's Statement of Facts ¶ 27.  Nationwide

subsequently paid Shelley Kenneth's claim "as an innocent co-insured" for $144,710.

*Id.* ¶ 31.  Nationwide's defenses include that Plaintiff misrepresented the cause of the

fire at the residence and was himself involved in its cause.  Defendant's Reply ¶ 9.

On June 12, 2001, according to Nationwide, Plaintiff personally delivered, to

Nationwide's attorney's office, documents in support of his claim which were "charred,

moldy and water-soaked" in garbage bags and buckets.  Defendant's Statement of

Facts ¶ 21, Defendant's Exh. H.  Additionally, Plaintiff brought three proof of loss forms

to the office with him which, according to Nationwide, were notarized, but otherwise

completely blank.[2]  Defendant's Fact Statement ¶ 21.  Plaintiff verbally inquired why

three separate proof of loss forms were necessary, and was advised by Nationwide

representatives that the forms were for Plaintiff's personal property loss, Plaintiff's loss

to the residence, and Plaintiff's loss of use of the residence, respectively.  Defendant's

Statement of Facts ¶ 21.  Defendant's representatives further advised Plaintiff at that

time to consider retaining legal counsel to assist him in completing the proof of loss

forms and Plaintiff retained, on June 15, 2001, James H. Clayton as his attorney in this

---

[2]  The record does not provide the date on which the proof of loss forms were notarized; however, as Plaintiff submitted to Nationwide, on July 17, 2001, the proof of loss form at issue, which was sworn to on May 22, 2001, the court infers that the proof of loss forms Plaintiff possessed on June 12, 2001, were also notarized on May 22, 2001.

matter.  *Id.* at ¶¶ 21-22.  Shelley Kenneth's Proof of Loss forms were notarized on July

16, 2001 and, on July 17, 2001, Plaintiff personally delivered to Nationwide the proof of

loss form related to his claim for damage to the residence and personal property losses,

along with inventory sheets and various receipts.  *Id.* at 24; Defendant's Motion, Exh. L

("Plaintiff's Proof of Loss Form").  As to the value of the residence, as requested by

Question 6 on Plaintiff's Proof of Loss Form, Plaintiff included a handwritten note,

"Refer to Shelley on total."  *Id.*  The number "13667.50" is written above Question No. 6,

which requests Plaintiff to declare the actual cash value of the insured residence at the

time of loss.  Plaintiff's Proof of Loss Form.  Plaintiff did not identify the amount of the

whole loss and damage as requested by Question No. 7 on Plaintiff's Proof of Loss

form, or the amount claimed under the applicable policy as requested by Question No.

9 on Plaintiff's Proof of Loss Form.  *Id.*  Plaintiff did not submit a proof of loss form for

his loss of use of the residence under the policy, presumably because at that time

Shelley had insisted that Plaintiff leave the residence while their expected divorce

proceedings were pending.  *Id.*

By letter dated August 8, 2001, Nationwide rejected Plaintiff's proof of loss

submissions based on "a number of technical and substantive deficiencies in the

completion of [the] forms," Defendant's Fact Statement ¶ 25 (referencing Defendant's

Exh. M. - "Defendant's Denial of Coverage Letter dated August 8, 2001") ("Denial of

Coverage Letter")).  Specifically, Nationwide rejected Plaintiff's proof of loss

submissions based on Plaintiff's failure to (i) submit separate and complete proof of

loss forms for dwelling and personal property claims; (ii) state the policy's date of

issuance and expiration; (iii) state adequately the amount of the policy at the time of loss; (iv) accurately respond to Question Nos. 5 and 6 requesting the total insurance coverage on the residence and its actual cash value at the time of the loss; and (v) respond to Question Nos. 7 and 9 on Plaintiff's Proof of Loss Form.  Denial of Coverage Letter.  In the Denial of Coverage Letter, Nationwide also reserved its rights under the policy, including the right to reject any loss of use claims submitted by the Plaintiff.  *Id.*; Defendant's Fact Statement ¶ 26.  Nevertheless, Nationwide included with the Denial of Coverage Letter two blank proof of loss forms for loss under Coverage A (dwelling) and Coverage C (personal property), permitting Plaintiff to submit these proofs of loss to Nationwide within 60 days of receiving the Denial of Coverage Letter.  Defendant's Fact Statement ¶ 26.  Plaintiff did not respond to this letter*, id.*, but subsequently stated in his Response to Defendant's First Set of Interrogatories, served by Plaintiff on Nationwide on January 17, 2005, that Plaintiff would not submit a claim for loss of use of the residence.  Defendant's Fact Statement ¶ 44; Defendant's Exh. AE ("Plaintiff's Response to Defendant's First Set of Interrogatories").

At the time of the fire, Plaintiff did not have a key to the residence, Plaintiff's Fact Statement ¶ 16, and judicial orders of protection against Plaintiff, effective April 4, 2001 through May 31, 2001, when the proof of loss forms were initially due, prohibited Plaintiff from communicating with or approaching Shelley Kenneth.[3]  Defendant's Exh. D; Plaintiff's Fact Statement ¶ 32.

Plaintiff's examination under oath ("EUO"), in accordance with the policy, was

---

[3] Some protection orders referred to in Defendant's Exh. D also prohibit Plaintiff from communicating with or approaching his children.

7

conducted on August 12, 2001; and, thereafter, by letter dated December 17, 2001,
Nationwide denied Plaintiff's claim based on (i) its determination that Plaintiff started the
fire, (ii) Plaintiff's failure to submit the proof of loss forms to Nationwide within 60 days
of receiving the Denial of Coverage Letter, and (iii) several other defenses Nationwide
re-asserted in its amended answer to the Complaint.  Defendant's Statement of Facts ¶
28 (citing Defendant's Exhibits O & S).  This action followed.

On April 16, 2004, Nationwide served Plaintiff with its First Set of Interrogatories,
pursuant to Fed.R.Civ.P. 33(a), and a Demand for Production of Documents, pursuant
to Fed.R.Civ. P. 34(a).  Defendant's Fact Statement ¶ 33, Defendant's Exhs. T and U.
Plaintiff failed to serve answers to Nationwide's interrogatories within the 30 day period
required by Rule 34(a).  On September 17, 2004, Nationwide served Plaintiff with its
Second Set of Interrogatories and Request for Production of Documents.  Defendant's
Fact Statement ¶35; Defendant's Exh. V.  By letter dated October 5, 2004, Nationwide
notified Plaintiff that responses to Nationwide's discovery demands were overdue,[4]
Defendant's Fact Statement ¶ 36, Defendant's Exh. X.  Plaintiff also failed to timely
serve answers to Nationwide's Second Set of Interrogatories or responses to
Nationwide's Second Set of Document Requests.  By letter dated November 2, 2004,
Nationwide advised the court that Plaintiff had failed to respond to Defendant's
discovery demands and was subject to sanctions in accordance with Fed.R.Civ.P. 37.
Defendant's Fact Statement ¶ 37, Defendant's Exh. Y.  By letter dated November 9,
2004, Nationwide requested Plaintiff's overdue discovery responses be served by

---

[4] Nationwide did not identify the specific discovery demands referenced in its letter, but,
presumably, Nationwide intended to refer to Defendant's First Set of Interrogatories.

November 12, 2004, "to avoid any unnecessary motion practice." *Id.* (referencing Defendant's Exh. Z)

By letter dated November 18, 2004, Plaintiff responded to Defendant's Second Set of Interrogatories and Request for Production of Documents. Defendant's Fact Statement ¶ 39 (referencing Defendant's Exh. AA). Thereafter, on November 30, 2004, Nationwide moved, pursuant to Fed.R.Civ.P. 33, 34 and 37(a), to compel Plaintiff's responses to Defendant's First Set of Interrogatories and Demand for Document Production. Defendant's Fact Statement ¶ 41 (referencing Defendant's Exh. AB). On January 5, 2005, following oral argument, the court granted Nationwide's motion to compel, directed Plaintiff to serve the overdue responses within 14 days, and awarded attorneys' fees to Nationwide in connection with the motion to compel. Doc. No. 13; Defendant's Fact Statement ¶ 43 (referencing Defendant's Exh. AD).

In accordance with the court's order, on January 17, 2005, Plaintiff served his responses to Defendant's First Set of Interrogatories and Demand for Production of Documents, Defendant's Fact Statement (referencing Defendant's Exhs. AE and AF, respectively), which included a statement that Plaintiff was unable to provide some of the information and documents Nationwide requested because Plaintiff was then incarcerated.[5] *Id.* ¶ 45 (referencing Defendant's Exh. AG). Plaintiff's answers to the interrogatories were not signed by Plaintiff as required by Fed.R.Civ.P. 33(b)(1) and (2). *Id.*

---

[5] Plaintiff was incarcerated on September 16, 2004, five months after Defendant served its initial discovery demands on Plaintiff on April 16, 2004. Defendant's Fact Statement ¶ 46.

## **DISCUSSION**

Nationwide moves for summary judgment based on Plaintiff's alleged failure to submit, as required under the policy, three signed, sworn proof of loss forms within 60 days of Nationwide's request for these forms.  Defendant's Memorandum at 29.  Alternatively, Nationwide moves, pursuant to Fed.R.Civ.P. 37 ("Rule 37") and Fed.R.Civ.P. 41(b) ("Rule 41(b)"), to dismiss the Complaint based on Plaintiff's alleged failure to comply with the court's orders, referred to by Nationwide as "discovery orders."  *Id.* at 26.  In opposition, Plaintiff argues that Plaintiff substantially complied with the provision of the policy requiring submission of proof of loss within 60 days of Nationwide's request and, in opposition to dismissal, that Plaintiff had complied with the court's orders.  Plaintiff's Memorandum at 2, 8.  Plaintiff maintains he should be allowed to submit further proof of loss information to Nationwide because, according to Plaintiff, Plaintiff timely submitted proof of loss to Nationwide which substantially complied with the policy conditions for payment by Nationwide of Plaintiff's share of the loss to the residence and all losses to his personal property.  *Id.* at 11.  Additionally, Plaintiff asserts Defendant's request for dismissal as a sanction be denied because Plaintiff complied with the court's scheduling order relating to pretrial discovery, and that his inability to respond more fully to Nationwide's discovery demands resulted from his incarceration and, therefore, did not constitute a willful or deliberate violation of the court's order.  *Id.*

## A.    **Defendant's Motion for Summary Judgment**

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving

party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried.  *Rattner, supra,* at 209.  In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party.  *Anderson, supra,* at 255; *Rattner, supra,* at 209.  If the moving party meets its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). The nonmoving party may not rest upon unsubstantiated allegations, conclusory

assertions or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  A metaphysical or other hypothetical doubt concerning a material fact does not establish a genuine issue requiring trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986).

### 1.    Plaintiff's Noncompliance With Policy Requirements

Nationwide argues that Plaintiff failed to comply with the terms of the policy by not submitting to Nationwide timely, signed, sworn and fully completed proof of loss forms, Defendant's Memorandum at 29, and, as such, Plaintiff's failure to abide by the terms of the policy regarding such proof of loss requirements warrants summary judgment.  *Id.*  In opposition, Plaintiff maintains that he timely submitted the proof of loss statement to Nationwide, as required by the policy, and, although Nationwide deemed Plaintiff's Proof of Loss Statement to be deficient, such deficiency does not, upon the record, warrant summary judgment.  Plaintiff's Memorandum at 11.  Rather, according to Plaintiff, genuine issues of fact exist whether Plaintiff substantially complied with Defendant's proof of loss requirements which preclude granting summary judgment.  *Id.*

A federal court sitting in a diversity case must apply the choice of law rules of the forum state which, in the instant case, is New York.  *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538 (2d Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).  As the parties do not dispute that New York law is applicable to the issues raised in this action, the court applies New York law.

"Compliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.'s,* 748 F.2d 118, 121 (2d Cir. 1984). "[A]n ambiguous provision in an insurance policy" is construed in favor of the insured. *Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 839-40 (2d Cir. 1981) (citing *Index Fund, Inc. v. Ins. Co. of N. Am.,* 580 F.2d 1158, 1162 (2d Cir. 1978)). To avoid a finding of ambiguity, the insurer must show "(1) that it would be unreasonable for the average man reading the policy to (construe it as the insured does) and (2) that its own construction was the only one that fairly could be placed on the policy." *Vargas, supra,* at 840 (quoting *Sincoff v. Liberty Mut. Fire Ins. Co.*, 183 N.E.2d 899, 901 (N.Y. 1962)). Essentially, the court must determine whether the insurer's interpretation of the contract is "the only reasonable and fair construction as a matter of law." *Vargas, supra*, at 840. In making such determinations, "provisions in an insurance contract for furnishing notice and proof of loss are to be liberally construed in favor of the insured." *P.S. Auctions, Inc. v. Exch. Mut. Ins. Co.,* 480 N.Y.S.2d 610, 610 (3rd Dep't 1984) (citing *Wachtel v. Equitable Life Assur. Soc.,* 194 N.E. 850 (N.Y. 1935)).

    **a.    Timeliness of Plaintiff's Proof of Loss**

Under New York law, an insured's failure to file a proof of loss statement timely is a material breach of the insurance contract and an absolute defense to recovering insurance policy proceeds. N.Y.Ins. Law § 3407(a) (McKinney 1985); *Varda, Inc. v. Ins. Co. of N. Am.,* 45 F.3d 634, 637 (2d Cir. 1995) (citing *Anthony Marino Constr. Corp. v. INA Underwriters Ins. Co.*, 505 N.E.2d 944, 944 (N.Y. 1987)); *Yaccarino v. St. Paul Fire*

& Marine Ins. Co., 542 N.Y.S.2d 660, 661 (2d Dep't 1989) (citing *Anthony Marino*

*Constr. Corp., supra*, and *Aryeh v. Westchester Fire Ins. Co.*, 525 N.Y.S. 2d 628 (2d

Dep't 1988)).   "Whether notice has been timely given is generally a question of fact;

only when delay is found to be wholly unexcused is notice held to be late as a matter of

law."  *Sphere Drake Ins. Co. v. Y.L.  Realty Co.,* 990 F.Supp. 240, 242 (S.D.N.Y. 1997).

Where an issue of fact exists as to whether notice was timely given, the question is one

for the jury, *Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Md.*, 202 F.2d 794, 800 (7th

Cir. 1953), but "[w]hen the facts are undisputed, it is for the court to determine the

timeliness or the sufficiency of the notice or proof of loss."  35A Am. Jur. 2d Insurance,

§ 107 (2007).

Here, as stated, Background, *supra,* at 4-5, the policy required Plaintiff to submit

"signed, sworn, proof of loss . . ." within 60 days of Nationwide's request.  Defendant's

Exh. G at E1.  It is undisputed that Plaintiff submitted a proof of loss on July 17, 2001,

within 60 days of Nationwide's request for such proof, received by Plaintiff on May 22,

2001.  Plaintiff's Proof of Loss Form; Defendant's Exh. I.  Nationwide, nevertheless

asserts that because Plaintiff's proof of loss form and supporting documentation, as

submitted, was so grossly deficient as to preclude Nationwide from determining its

rights and liabilities under the policy, no valid, timely proof of loss was given.

Defendant's Motion ¶ 18.  However, under New York law, the sufficiency of the

insured's information in the proof of loss form has no bearing on the timeliness of the

form's submission to a carrier.  *Star Shoes Boutique, Inc. v. Ins. Co. of N. Am.,* 1984

WL 1372 at *2 (S.D.N.Y. 1984) (rejecting insurer's contention that proof of loss filed

within 60 day period was untimely because "incomplete") (citing *Igbara Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 470 N.E.2d 858 (N.Y. 1984) incorrectly as *Bonus Warehouse, Inc. v. North River Insurance Co.*; *Yaccarino,* 542 N.Y.S.2d at 661).

In *Yaccarino, supra,* the plaintiff timely filed a sworn proof of loss statement with the defendant-insurer within 60 days of receiving defendant's initial request for proof of loss. *Yaccarino,* 542 N.Y.S.2d at 661. Defendant-insurer rejected plaintiff's proof of loss submission as untimely based on plaintiff's allegedly "improper responses." *Id.* Despite defendant-insurer's rejection of the plaintiff's proof of loss submission as insufficient, the court found plaintiff's proof of loss submission timely filed, and rejected defendant-insurer's affirmative defense on this ground. *Id.* In *Star Shoes Boutique, Inc., supra,* the court rejected insurer's argument that "deficient" proof of loss was a nullity and thus not timely filed by insured. *Star Shoes Boutique, Inc.,* 1984 WL 1372 at *2.

In this case, the court finds Nationwide's determination that Plaintiff's proof of loss submission was deficient, and thus, according to Nationwide, non-compliant with such prerequisite to payment of a claim under the policy, does not negate the fact that Plaintiff timely filed his proof of loss in compliance with the 60 day policy requirement. Defendant's motion based on Plaintiff's untimely filing of proof of loss is, therefore, DENIED.

### b.    Deficiencies in Plaintiff's Proof of Loss Form

Nationwide further argues that the proof of loss form submitted by Plaintiff on July 17, 2001 was incomplete, as well as technically and substantially deficient, in that it

(i) did not identify the date the policy was issued, the date the policy expired, or the amount of the policy at the time of loss; (ii) identified inaccurately the total insurance amount; (iii) listed replacement cost instead of the actual cash value of the residence; and (iv) was submitted on one form instead of three separate forms for each category of property loss.  Defendant's Motion ¶ 18.  Nationwide also argues that on Plaintiff's Proof of Loss Form, Plaintiff failed to identify the whole loss and damage "claimed under the policy," Defendant's Memorandum at 3, and that Plaintiff failed to correct these deficiencies within the 60 additional days granted by Nationwide to cure and to resubmit complete proofs of loss.  Reply Affirmation ¶ 13.  Nationwide further contends Plaintiff's proof of loss in support of his claim for personal property losses was deficient for the same reasons.  Defendant's Motion ¶¶  12, 14-16, 18-19; Reply Affirmation ¶ 45.

Plaintiff contends that he provided Nationwide with the essential information necessary to "investigate and evaluate" Plaintiff's claims, Plaintiff's Memorandum at 8, by timely submitting a proof of loss form to Nationwide related to Plaintiff's claim for his property losses and requesting Nationwide to refer to his wife and co-insured, Shelly Kenneth's, proof of loss statement to obtain any additional information describing Plaintiff's loss.[6]  Reply Affirmation ¶ 34.  According to Plaintiff, Shelley Kenneth "was in a better position to provide the information requested by Nationwide" than was Plaintiff

---

[6] A review of the proof of loss form submitted by Plaintiff to Nationwide reveals that Plaintiff referred Nationwide to Shelley Kenneth's proof of loss submission as it relates to his property loss to the residence; however, as to Plaintiff's claim for personal property loss, whereas Plaintiff, in one instance, stated he did not refer to Shelley Kenneth's proof of loss submission regarding his claim for loss of personal property, Plaintiff's Memorandum at 7, Plaintiff nevertheless contends he did refer Nationwide to Shelley Kenneth's proof of loss submissions in response to Nationwide's request that Plaintiff "compute, calculate, itemize and state with particularity" his personal property damages.  Grossman Affidavit ¶ 42.  Despite this apparent inconsistency, the court considers Plaintiff to maintain he referenced Shelley Kenneth's proof of loss forms on each of his property loss claims for both the residence and his personal property.

at that time, Plaintiff's Memorandum at 7, presumably because of the restraining order in effect against Plaintiff when the fire occurred which restricted Plaintiff's access to his wife and the residence.  Plaintiff also argues that because he was legally married to Shelly Kenneth at the time of his property loss under the policy based on damage to the residence, he is entitled to one-half of the total loss to any marital property, including the residence, as described in Shelley Kenneth's proof of loss statement which she submitted to Nationwide.  Grossman Affidavit ¶¶ 42-43, 46.  Finally, Plaintiff asserts his proof of loss submission to Nationwide was not so "grossly insufficient" that Nationwide could not determine Plaintiff's entitlement to coverage for his asserted losses under the policy.  Plaintiff's Memorandum at 8.

As stated, Discussion, *supra,* at 13-15, where the facts are undisputed, the timeliness and sufficiency of an insured's proof of loss statement are questions for the court.  *Irvin Jacobs & Co.*, 202 F.2d at 800; 35A Am. Jur. 2d Insurance, § 107 (2007); *see also Yaccarino,* 542 N.Y.S.2d at 661 (finding plaintiff's proof of loss substantially complied with the relevant insurance policy provisions).  Under New York law, "no particular form of proof of loss is required as long as the proof submitted is sufficient to enable the insurer to consider its rights and liabilities." *Harris v. Allstate Ins. Co.*, 83 F.Supp.2d 423, 429-30 (S.D.N.Y. 2000) (quoting *P.S. Auctions, Inc.,* 480 N.Y.S.2d at 610).  Generally, in New York courts, "proof of loss requirements are liberally construed in favor of the insured," and proof of loss statements need only be in "substantial rather than strict compliance" with a policy provision.  *Yaccarino,* 542 N.Y.S.2d at 661.  Thus, New York law requires only that, under an insurance policy subject to New York law, a

17

claimant's proof of loss forms as submitted to an insurer must be in substantial, rather than strict, compliance with the policy's terms.  *Id.*

Here, the policy provides, in pertinent part that in "case of loss" the Kenneths submit to Nationwide, within 60 days after Nationwide's request, a "signed, sworn proof of loss which sets forth, to the best of [the insured's] knowledge and belief:

> (1)    the time and cause of loss.
>
> (2)    interest of the **insured** and all others in the property involved and all liens on the property.
>
> (3)    other insurance that may cover the loss.
>
> (4)    changes in title or occupancy of the property during the term of the policy.
>
> (5)    specifications of any damaged property and detailed estimates for repair of damage.
>
> (6)    a list of damaged personal property showing in detail the quantity, description, **actual cash value,** and amount of loss.  Attach all bills and receipts that support the figures.
>
> (7)    receipts for additional living expenses and records supporting the fair rental value loss.
>
> (8)    evidence of affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card and Forgery Coverage.  It should state the amount and cause of loss."

Defendant's Memorandum at 3-4 (referencing the policy form HE31 at E1) (bold text in original) (bracketed material added).

Relevantly, nothing in this provision, or other provisions in the policy, required a specific level of detail regarding the requested proof of loss information, and Nationwide points to none.  While "[c]ompliance with notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law," *Utica Mut. Ins. Co. v.*

*Fireman's Fund Ins. Co.'s*, 748 F.2d 118, 121 (2d Cir. 1984), "an ambiguous provision in an insurance policy" is construed in favor of the insured.  *Vargas, supra,* at 839-40.

Although, by letter dated May 18, 2001, Nationwide requested that Plaintiff submit signed, sworn proof of loss forms for his personal property, dwelling, and loss of use claims, Defendant's Fact Statement ¶ 19 (referencing Defendant's Exh. I ("May 18, 2001 Letter")), the letter did not state Plaintiff must submit each claim on a separate proof of loss form.  Moreover, no language in the policy provision requiring the insured to submit a proof of loss to Nationwide instructs the insured to fill out three separate proof of loss forms.  *Facts, supra,* at 2; Discussion, *supra*, at 18.  Absent specific language in the policy requiring three separate forms for damage to the residence, personal property and loss of use, and consistent with well-established New York law that "notice and proof requirements are to be liberally construed in favor of the insured," *Yaccarino, supra* (citing *Della Porta v. Hartford Fire Ins. Co.,* 500 N.Y.S.2d 831, 832 (3rd Dep't 1986); *Ninth Fed. Sav. & Loan Assn. v. New York Prop. Ins. Underwriting Ass'n*, 471 N.Y.S.2d 284 (1st Dep't 1984)), the court finds the Plaintiff's failure to provide three forms of proof of loss to Nationwide does not, as a matter of law, defeat Plaintiff's right to payment for his claimed losses under the policy.[7]  *See Vargas, supra*, at 839-40.

As noted, Discussion, *supra*, at 18, the policy provision requiring Plaintiff to submit proof of loss requested Plaintiff to state the actual cash value of personal

---

[7] In its letter to Plaintiff requesting proof of loss, the instructions for completing the proof of loss forms, which were enclosed in the envelope with the letter to Plaintiff requesting Plaintiff submit proof of loss forms to Nationwide, stated that "[a] separate form should be completed for the claim for personal property and in regard to the dwelling."  Defendant's Exh. I.  However, as this instruction is inconsistent with the policy terms, it creates an ambiguity insufficient to deprive Plaintiff of coverage.  *See Vargas, supra,* at 839-40; *Yaccarino, supra.*

property lost in the fire, but the proof of loss form Plaintiff submitted to Nationwide, which Nationwide had previously provided to Plaintiff, requested, in Question No. 6, the actual cash value "of the property at the time of loss."  Defendant's Exhs. L ("Plaintiff's Proof of Loss Form") and N ("Shelley Kenneth's Proof of Loss").  Under New York law, any discrepancy between the language in the policy and as used in the proof of loss form creates an ambiguity as to what property, Plaintiff's residence or personal property, the question regarding actual cash value refers and, as proof of loss requirements in insurance policies under New York law are, as stated, Discussion, *supra*, at 18-19, to be "liberally construed in favor of the insured," *Yaccarino,* 542 N.Y.S.2d at 661, Plaintiff's proof of loss form is not insufficient as a matter of law based on Plaintiff's response to Question No. 6.

Specifically, in response to Nationwide's proof of loss Question No. 6, Plaintiff stated, in regard to Plaintiff's claim for loss to the residence, that Nationwide should "Refer to Shelley on total."  Facts, *supra,* at 6.  Although, under New York law, a notice of claim provided to an insurer by another insured will not satisfy the other co-insured's contractual obligation to provide timely notice to the insurer, *Roofing Consultants Inc. v. Scottsdale Ins. Co.,* 709 N.Y.S.2d 782, 783 (4th Dep't 2000) (citing New York cases), the sufficiency of a coinsured's otherwise timely proof of loss form will not be defeated based on that coinsured's reference to another coinsured's timely proof of loss. Although an insurance policy "must be construed as covering the interests of each [insured] separately, a construction consistent with the reasonable expectations of a policyholder," *Sutton Hill Assocs. v. Landes,* 775 F.Supp. 682, 688 (S.D.N.Y. 1991)

(bracketed text added), "[i]t is well-settled that, where insurance is procured by several owners, a proof of loss may be presented by any one of them to the benefit of all." *Della Porta*, 500 N.Y.S.2d at 833.

As such, Plaintiff's reference to the information submitted to Nationwide in Shelley Kenneth's proof of loss claim in response to Nationwide's questions regarding details of Plaintiff's property loss based on fire damage to the residence does not, therefore, render Plaintiff's proof of loss deficient as a matter of law and, to the contrary, provides Nationwide with information sufficient to "determine its rights and liabilities," which is the purpose of a proof of loss statement, as to Plaintiff's claims. *S.R. Intern Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*, 381 F.Supp.2d 250, 259 (S.D.N.Y. 2005) (citing New York caselaw).  By referencing, along with the policy number provided by Plaintiff, Shelley Kenneth's proof of loss forms regarding his loss claim for the residence, which were professionally prepared by a public adjuster, and as a result of which Shelley Kenneth received payment from Nationwide for all of her losses based on her submitted proof of loss statements, Plaintiff, in fact, advised Nationwide of all the information Nationwide asserts Plaintiff failed to include in his proof of loss, specifically, the date the policy was issued, the date the policy expired, the amount of the policy at the time of loss, and the total insurance amount.

For similar reasons, the evidence does not support, as a matter of law, Nationwide's refusal to consider Plaintiff's claims for his personal property losses.  First, it is undisputed that Plaintiff delivered, on July 17, 2001, to Nationwide receipts and other documents that were, unsurprisingly given the fire damage at the residence,

"charred, moldy and water-soaked."  Facts, *supra*, at 3.  Tellingly, although Nationwide

describes these documents as extremely disorganized and "unresponsive to

Nationwide's requests" in some instances, Storm Affidavit ¶ 10, Nationwide does not

represent such records were of no use to it in considering Plaintiff's personal property

damages claim.  Second, Shelley Kenneth's proof of loss, to which Plaintiff referred

Nationwide on his proof of loss form, included several pages of personal property items,

and related values, lost in the fire at the residence that Shelley Kenneth represented, in

notations at the top of each page, were owned by both her and Plaintiff.  Defendant's

Exh. N (Shelley Kenneth's Proof of Loss, *i.e.*, "Thomas & Shelly Kenneth") (underlining

added).  As noted, a coinsured may, in satisfaction of a proof of loss requirement,

present proof of loss information "to the benefit of all" coinsureds.  *Della Porta,* 500

N.Y.S.2d at 833.  Plaintiff's assertion that his personal property claims may differ from

those of Shelley Kenneth and that therefore Plaintiff "did not request" Nationwide to

refer to Shelley Kenneth's proof of loss, Plaintiff's Memorandum at 7 (underlining in

original) is not dispositive as this statement was filed well after Nationwide's rejection of

Plaintiff's claim, and is inconsistent with the plain language in Shelley Kenneth's proof

of loss forms as submitted to Nationwide.  Therefore, the court finds the record

demonstrates the existence of material issues of fact as to the sufficiency of Plaintiff's

proof of loss in support of Plaintiff's claims for his losses to both the residence and

personal property under the policy.

Nationwide relies on *Graziane v. Nat'l Sur. Corp.*, 501 N.Y.S.2d 232, 232 (3d

Dep't 1986) and *Krupp v. Aetna Life & Cas. Co.,* 479 N.Y.S.2d 992 (2d Dep't 1984) to

support its contention that Plaintiff cannot refer to Shelley Kenneth's proof of loss forms in support of Plaintiff's claims for Plaintiff's property damage against the policy because, according to Nationwide, spouses' interests must be treated separately.  Defendant's Memorandum at 10-12.  However, such reliance is misplaced.  In the instant case, the court is not presented with an innocent co-insured's right to recover, as in *Krupp*, under an insurance policy when the damage was caused by the co-insured spouse.  *Krupp, supra,* at 258.  Nor is Plaintiff attempting to intervene in order to obtain a portion of the insurance proceeds to which Shelley Kenneth was entitled and which Nationwide paid, as in *Graziane*.  *Graziane, supra,* at 775-76.  Here, Plaintiff is a co-insured and entitled to coverage subject to Nationwide's defense, *inter alia*, that Plaintiff caused the disputed losses, an issue not presently before the court on the instant motion and which therefore must be resolved at trial.  Accordingly, *Graziane* and *Krupp* are inapposite. First, contrary to Nationwide's contention, it does not follow that because the interests of co-insured spouses must, for purposes of establishing a right to coverage, be treated independently, the general rule that a co-insured may reference another co-insured's proof of loss in compliance with a requisite to such coverage is displaced.  Significantly, Nationwide points to no authority supporting such a broad proposition, and the court's research reveals none.  Moreover, Nationwide posits no increased risk of fraud or other consideration relevant to a fair and reasonable processing of Plaintiff's insurance claim sufficient to negate Plaintiff's reliance on Shelley Kenneth's proof of loss, and the court perceives none.

Under New York law, it is well-established that "technical or unimportant

23

omissions" are insufficient to support forfeiture of the right to recover insurance proceeds by an insured. *Staten Island Supply Co., Inc. v. Lumbermens Mut. Cas. Co.*, 2005 WL 711678 at * 7 (E.D.N.Y. 2005); *see also Porter v. Trader's Ins. Co. of Chicago*, 58 N.E. 641, 643 (N.Y. 1900) ("[w]hether omissions or departures from the strict letter [of the insurance contract] are substantial or merely unimportant mistakes is generally a question of fact") (bracketed material added).  As a finding of substantial compliance with the policy precludes a finding of a material breach, Plaintiff's alleged failures to comply strictly with the policy's requirements regarding proof of loss may thus be found by the trier of fact to be immaterial.  *Net2Globe Intern., Inc. v. Time Warner Telecom of N.Y.*, 273 F.Supp.2d 436, 457 (S.D.N.Y. 2003) ("where a party materially breaches, he has failed to substantially perform the contract").  Accordingly, Defendant's motion is DENIED.

**B.    Motion to Dismiss Complaint Based on Failure to Comply with Court's Discovery Order**

Nationwide alternatively argues that, should the court find Plaintiff sufficiently complied with the policy condition requiring Plaintiff to provide adequate proof of loss within 60 days of receiving Nationwide's proof of loss request, thereby avoiding summary judgment, the Complaint should nevertheless be dismissed with prejudice, pursuant to Rules 37 and 41(b), based on Plaintiff's failure to comply with the court's discovery order.[8]  Defendant's Memorandum at 14-26.  Specifically, Nationwide contends Plaintiff's incarceration, Plaintiff's primary reason for failing to respond to

---

[8] Fed.R.Civ.P. 37 provides for sanctions which may be imposed against parties who fail to cooperate in discovery.  Fed.R.Civ.P. 41(b) permits a defendant to move to dismiss plaintiff's action for failure to prosecute or comply with a court order.

discovery demands during the course of the lawsuit, is insufficient to avoid sanctions because Plaintiff had five months within which to respond to Nationwide's initial discovery demands before Plaintiff was incarcerated on September 16, 2004. Defendant's Memorandum at 18-19.  Nationwide further maintains that, standing alone, incarceration does not absolve a party from his duty to fully comply with valid discovery requests, and diligently pursue his lawsuit.  *Id.* at 18.  In opposition, Plaintiff maintains he complied with the court's order directing Plaintiff to respond to Defendant's First Set of Interrogatories and, as such, dismissal as a sanction is unwarranted.  Grossman Affidavit ¶¶ 25, 28.

"A district court may impose sanctions when 'a party . . . fails to obey an order to provide or permit discovery.'" *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 594, 598 (W.D.N.Y. 1996) (quoting Fed.R.Civ.P. 37(b)).  Such sanctions, as relevant, include an order directing striking pleadings, granting a stay until the order is obeyed, an order dismissing the action or granting a default judgment.  Fed.R.Civ.P. 37 (b)(2)(C). However, scheduling orders, entered pursuant to Fed.R.Civ.P. 16(b), are not the type of "discovery orders" that provide grounds within the scope of Rule 37(b) sanctions. *Camara v. Daise,* 2001 WL 263006 at * 5 (S.D.N.Y. 2001).  Plaintiff nevertheless may be sanctioned for failing to comply with the court's scheduling order pursuant to Defendant's motion to dismiss the action based on Plaintiff's noncompliance with Rule 16(b).  *Id.  "*If Rule 37(b)(2) applied to scheduling orders, it would duplicate Rule 16(f) providing for sanctions in the event that a party fails to obey "a scheduling or pretrial order." *Camara*, 2001 WL at * 5 n. 18 (referencing Fed.R.Civ.P. 16(f)).  A court is not

required to warn parties that disregarding discovery orders may result in sanctions, *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1366-67 (2d Cir. 1991), and the "[i]mposition of discovery sanctions is within the broad discretion of the court." *Burns, supra*, at 598 (citing *Bobal v. Renssalear Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943 (1991); and *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 386-87 (2d Cir. 1981)).  Finally, the court may impose reasonable expenses, including attorney's fees, caused by the party's failure to obey the court's discovery orders.  Fed.R.Civ.P. 37 (b); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990) (pattern of ignoring discovery requests and court orders supported award of attorneys fees to prevailing party and evidentiary sanctions).

Although striking a pleading or entry of a default judgment are available to the court as sanctions, such severe remedies "ordinarily are not imposed unless disobedience has been willful, in bad faith, or otherwise culpable." *Burns, supra* (citing *Societe Int'l Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958) (sanctions under Rule 37 justified where responding party has control over documents requested and fails or refuses production without showing of inability to comply with court's order)) ("*Societe Int'l*"); and *Daval Steel Prods.*, 951 F.2d at 1367 (order prohibiting corporations from presenting evidence on the issue of *alter ego* liability for failure to respond to a court order requiring document and witness production for depositions)); *see also Jackson v. Nissan Motor Corp. in U.S.A.*, 121 F.R.D. 311, 318 n. 71 (M.D.Tenn. 1988) (if the failure to comply creates a presumption of bad faith or untruthfulness, no due process violation occurs by imposing sanctions as such failure

to produce is tantamount to admitting the case is without merit).  Nevertheless, the

severe sanction of dismissal of a lawsuit under Rule 37 should be imposed only under

extreme circumstances, *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d

Cir. 1999), and not unless the failure to comply with a pretrial production order results

from willfulness, bad faith, or fault of the sanctioned party.  *West, supra*, at 779.  Open

and unequivocal defiance of court ordered discovery is, notwithstanding, sufficient to

support a finding of bad faith or willful misconduct supporting the severe sanction of

dismissal of a pleading.  *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734

(2d Cir. 1987) (*pro se* plaintiff's refusal to answer questions at court ordered deposition

supported dismissal of complaint) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d

Cir. 1986)).  Moreover, repeated failure of a party ordered to produce documents will

also support ordering a severe sanction.  *Burns, supra*, at 597.

In *Societe Int'l, supra*, the Supreme Court stated

> [Rule 37] should not be construed to authorize dismissal of
> [a] complaint because of petitioner's noncompliance with a
> pretrial production order when it has been established that
> failure to comply has been due to inability, and not to
> wilfulness, bad faith, or any fault of petitioner.

S*ociete Int'l, supra*, at 212.

Thus, Courts have generally held that the most severe sanction of dismissal should not

be imposed absent justification such as some element of culpability.  *Burke v. ITT

Auto., Inc.*, 139 F.R.D. 24, 32 (W.D.N.Y. 1991).  In *Societe Int'l*, the Court held that the

dismissal of the plaintiff's complaint violated due process because plaintiff's failure to

comply with discovery was not attributable to plaintiff's conduct or to circumstances

27

within plaintiff's control and, therefore, was not plaintiff's "fault." *Id.* at 211-12.  The

Second Circuit has held that the "fault" criterion announced in *Societe Int'l* includes a

party's gross negligence in failing to obey an order compelling discovery.  *Cine Forty-*

*Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-68 (2d

Cir. 1979).

In determining whether to impose sanctions under Rule 37, the court considers

seven factors, including

> 1) the history of the failure to comply with court orders; 2)
> whether the party violating the order was given ample time
> to respond; 3) the effectiveness of alternative sanctions; 4)
> whether the noncomplying party was warned of and given an
> opportunity to argue against the impending sanction; 5) the
> prejudice to the adversary caused by the failure to comply;
> 6) whether the documents at issue would normally be readily
> obtainable; and 7) the extent of the party's personal
> responsibility.

*Burke, supra*, at 33.

Applying the factors, as stated in *Burke, supra,* to the instant case and the culpability

requirement for the sanction of dismissal, *Cine Forty-Second St. Theatre Corp.*, 602

F.2d at 1066-68, the court finds the extreme sanction of dismissing the Complaint,

requested by Nationwide, is, upon the record, unwarranted.

It is undisputed that Plaintiff's counsel did not respond to Defendant's First or

Second Set of Interrogatories within 30 days of receiving them, as required, nor did

Plaintiff's counsel respond by the August 30, 2004 deadline for completion of fact

discovery established by the court in its Rule 16(b) scheduling order, filed August 2,

2004.  (Doc. No. 9).  Moreover, Plaintiff's counsel provided no explanation for ignoring

Defendant's First Set of Interrogatories, providing allegedly incomplete answers to Defendant's First Set of Interrogatories, or his failure to answer several letters from Defendant's attorney requesting Plaintiff respond to Defendant's outstanding discovery demands.  Defendant's Exh. L ("11/18/04 Grossman Letter.").  Further, Plaintiff's counsel on this matter, Mr. Grossman, represented that, although he was aware a motion to compel was pending against Plaintiff, Grossman was unaware of the date answers to Defendant's First Set of Interrogatories were due because he was "not advised as to the date imposed by the Court for the submission of a response and was not advised as to the date of the argument of [Nationwide's] Motion [to compel] until his receipt of the January 4, 2005 facsimile" from Nationwide. Plaintiff's Fact Statement ¶¶ 46 (referencing Plaintiff's Exh. H.).[9, 10]  At the outset, the court notes that, although Plaintiff's eventual responses to Defendant's First and Second Sets of Interrogatories were not timely within the period for fact discovery to be concluded established by the court's Rule 16(b) scheduling order, as Nationwide did not move for dismissal pursuant to Fed.R.Civ.P. 16(f), dismissal, as a sanction based on Plaintiff's failure to complete

---

[9] Plaintiff cites no authority which requires the court or opposing counsel to ensure a party is aware of discovery-related deadlines it is required to meet, and the court is aware of none.

[10] According to the court's docket, H. James Clayton, Esq. ("Clayton") was the attorney of record for Plaintiff, but Grossman entered an appearance as being of counsel to Clayton for Plaintiff when the action was removed to this court on July 9, 2003, prior to this court's scheduling order, filed on August 2, 2004. Plaintiff's Fact Statement ¶ 44.  Grossman asserts from that point on, Nationwide's counsel submitted all correspondence to both Clayton and Grossman. *Id.* Therefore, according to Grossman, Clayton did not forward notification of the date to respond to the motion or the date of the oral argument. Grossman describes this as an "inadvertent failure to inform counsel for the Plaintiff [Grossman] as to the Scheduling Order" and Defendant's motion.  Grossman represents he and Clayton have agreed to exchange all future correspondences.  *Id.* ¶ 45.  Grossman pledged to file a formal substitution of attorneys with the court, but to date such has not been filed.  *Id.*

discovery within the established discovery period, is not permissible on this record.[11]

Although Plaintiff's discovery responses were tardy based on this court's Rule 16(b) scheduling order, no evidence in the record supports finding that Plaintiff, personally or through counsel, willfully refused to provide Nationwide with the requested discovery.  Plaintiff's counsel should not have relied upon Nationwide's attorney and Plaintiff's co-counsel to receive notification of orders, motions, and deadlines pertaining to this case.  Nevertheless, upon learning of the court's order compelling Plaintiff to answer Defendant's First Set of Interrogatories, Plaintiff responded within the period established by the court.[12]  "Obviously, the fact that plaintiff eventually responded to the interrogatories does not 'moot' or otherwise prevent the Court from imposing sanctions," *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 195 n. 4 (S.D.N.Y. 1995), however, for Plaintiff's complaint to be dismissed based on Plaintiff's failure to answer Nationwide's interrogatories, Plaintiff's conduct must have been "willful, in bad faith, or otherwise culpable."  *Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D.190, 196 (W.D.N.Y. 2005) (citing *Burns, supra,* at 598).

In this case, (i) Plaintiff submitted his Response to Defendant's First Set of Interrogatories within the deadline established by the court's order compelling discovery; (ii) no evidence in the record establishes that Plaintiff willfully failed to comply

---

[11] By oral order, on January 5, 2005, Plaintiff's counsel was ordered to pay Nationwide's attorneys' fees on its successful motion to compel.  Plaintiff's Memorandum at 11; Doc. No. 13 ("Oral Order Granting Defendant's Motion to Compel and Request for Attorneys' Fees").

[12] On January 5, 2004, the court ordered Plaintiff to answer Defendant's First Set of Interrogatories and Demand for Production of Documents no later than 14 days from January 5, 2005. (Doc. No. 13).  In compliance with this direction, on January 17, 2005, Plaintiff served Plaintiff's Response to Defendant's First Set of Interrogatories.

with his discovery obligations by submitting inadequate responses or was personally

responsible for any delay; and (iii) the record demonstrates Plaintiff's overall good-faith

attempt to comply with his discovery obligations.  Specifically, Plaintiff's attorney

informed Defendant's counsel at a conference before the court on July 28, 2004 that

Plaintiff did not possess any written documents supporting Plaintiff's claim "other than

those which had been submitted [to Plaintiff] by Nationwide," Plaintiff's Fact Statement

at 13, and although this representation does not, by itself, excuse Plaintiff from the

obligation to provide such information to Defendant through answers to Defendant's

interrogatories, in a telephone conversation between Plaintiff's counsel and Defendant's

attorney, which occurred on January 17, 2005, *id.* at 13-14, after Nationwide had been

served with Plaintiff's answers to Defendant's First Set of Interrogatories, Nationwide

agreed that Plaintiff need not duplicate records and reports Nationwide previously

provided to Plaintiff.  *Id.* at 13.

Plaintiff's good-faith attempt to comply with outstanding discovery obligations is

also inferrable from Plaintiff's counsel's representation, in a letter to Nationwide's

attorney dated January 14, 2005 which accompanied Plaintiff's answers to Nationwide's

First Set of Interrogatories and responses to Defendant's Demand for Production of

Documents, that Plaintiff believed he was, at that time, in full compliance with

Nationwide's discovery demands and the court's scheduling order.  Plaintiff's Exh. I

("Grossman Discovery Letter").  In the Grossman Discovery Letter, Plaintiff's attorney

requested that Nationwide advise him of any of Nationwide's discovery requests that

remained outstanding, to which Plaintiff promised to respond so as to fully comply with

the court-imposed deadline.  *Id.*  Finally, Plaintiff represented he would, as required,

amend his responses to Nationwide's discovery demands should Plaintiff acquire additional information that had been requested by Nationwide.  *Id.*  Significantly, at no time before Nationwide's November 30, 2004 motion to compel Plaintiff to respond to Defendant's First Set of Interrogatories and Demand for Production of documents, did Nationwide object to Plaintiff's failure to respond to these discovery demands, Plaintiff's Fact Statement ¶ 42, 48, and despite such non-compliance by Plaintiff, Nationwide was able to serve Plaintiff with its Second Set of Interrogatories before receiving, on January 17, 2005, Plaintiff's responses to Defendant's First Set of Interrogatories and Demand for Production of Documents.  Defendant's Fact Statement ¶¶ 37, 44.  Nationwide's capacity to proceed with discovery despite Plaintiff's tardiness in answering Nationwide's First Set of Interrogatories and document requests is thus indicative of the absence of prejudice to Nationwide's ability to litigate this case because of Plaintiff's then overdue responses to Defendant's First Set of Interrogatories and document requests.  Based on the foregoing analysis of the relevant actions, the court cannot find that, once sanctioned for failing to comply with Nationwide's initial discovery demands, Plaintiff demonstrated gross negligence or willfulness in his delayed responses to Defendant's First Set of Interrogatories and document requests.  As Plaintiff's conduct in providing discovery does not warrant the severe sanction of dismissal, Nationwide's motion to dismiss is considered by the court as a motion to compel Plaintiff to respond more fully to Defendant's First Set of Interrogatories.  Discussion, *infra,* at 32-39.

Prior to the court's granting Nationwide's motion to compel, Plaintiff also responded to Nationwide's letter, dated November 9, 2004, which requested Plaintiff submit all outstanding discovery to Defendant or subject himself to motion practice, by

serving Nationwide with Plaintiff's answers to Defendant's Second Set of Interrogatories and Demand.  Defendant's Fact Statement ¶¶ 38-41.  Although Plaintiff did not answer Defendant's First Set of Interrogatories prior to the order to compel, Plaintiff's failure to do so is not conclusive evidence of bad faith or willful misconduct.  *See Urban Electrical Supply and Equipment Corp., v. New York Convention Center Develop. Corp.*, 105 F.R.D. 92, 98 (E.D.N.Y. 1985) (dismissal sanction available for attorney gross neglect).  Rather, at worst, Plaintiff's failure to timely respond represents a degree of neglect, which, although not condoned, does not, on this record, warrant dismissal.  This conclusion is particularly justified where, as here, such neglect appears to be solely attributable to Plaintiff's attorney, not Plaintiff himself.  *See Cine Forty-Second St. Theatre Corp.,* 602 F.2d at 1068 (court should "eschew harshest sanction" in response to attorney's "simple negligence").  The court, therefore, turns to the adequacy of Plaintiff's responses to Defendant's First Set of Interrogatories.

A party may request, without leave of court or stipulation, another party to answer up to 25 written interrogatories.  Fed.R.Civ.P. 33(a) ("Rule 33( _ )").  Answers must be provided under oath and signed by the person making them.  Fed.R.Civ.P. 33(b)(1), (2).  Objections to any interrogatory must be stated specifically, and unless such objection is stated within the 30 days permitted for answers to be served upon the requesting party, such objections are deemed waived.  Fed.R.Civ.P. 33(b)(4).  Additionally, any party may request from another party relevant documents or copies of such documents which are in the "custody and control" of the requested party.  Fed.R.Civ.P. 34(a) ("Rule 34 ( _ )").  Unless an objection to such request is stated within

the 30 days allowed for responding to such requests, Fed.R.Civ.P. 34(b), such

objection is also deemed waived. *Drexel Heritage Furnishings, Inc. v. Furniture USA,*

*Inc.*, 200 F.R.D. 255, 258-59 (M.D.N.C. 2002); *Land Ocean Logistics, Inc. v. Aqua Gulf*

*Corp.*, 181 F.R.D. 229, 237 (W.D.N.Y. 1998).

A requested party may not refuse to respond to a requesting party's discovery

request on the ground that the requested information is in the possession of the

requesting party. *Land Ocean Logistics, Inc. v. Aqua Gulf Corp., supra*, at 240.  Nor is

it permissible to refuse to provide answers to interrogatories served pursuant to Rule

33(a) or documents in response to a request, pursuant to Rule 34(a), on the ground

that information sought can be gleaned from the requested party's pleading. *Davidson*

*v. Goord,* 215 F.R.D. 73, 77 (W.D.N.Y. 2003).  As answers to interrogatories served

pursuant to Rule 33(a) must be in a form suitable for use at trial, it is insufficient to

answer by merely referencing allegations of a pleading. *Faran v. Johnston Equip., Inc.*,

1995 WL 549005 *5 (E.D.Pa. 1995); *King v. E.F. Hutton, Inc.,* 117 F.R.D. 2, 6 (D.D.C.

1987) ("Nor is it an adequate response to say that the information is reflected in the

complaint, no matter how detailed."); *See also* 4A James Wm. Moore *et al.*, Moore's

Federal Practice ¶ 33.25[1] (2d ed. 1994).  Generalized objections that a discovery

request is burdensome without resort to specific reasons is similarly insufficient to justify

a refusal to respond. *Burns v. Imagine Film Entm't, Inc.*, 164 F.R.D. 589, 592-93

(W.D.N.Y. 1996) (internal citations omitted).

Interrogatory No. 3 of Defendant's First Set of Interrogatories requests Plaintiff to

identify each document or exhibit, including summaries, which Plaintiff may offer at trial,

as well as the location and general description of such items.[13]  Defendant's Exh. AE.

Plaintiff objected to Interrogatory No. 3 on the grounds that this interrogatory is beyond

the scope of permissible demand for interrogatories, as permitted by Rule 33.  *Id.*

Despite Defendant's objection, Plaintiff nevertheless answered the interrogatory.

Nationwide has proffered no reason why Plaintiff's answer to Interrogatory No. 3 is

inadequate, and the court finds none.  Therefore, treating Defendant's motion to

dismiss as one to compel, the motion as to Plaintiff's answer to Interrogatory No. 3 is

DENIED.

Defendant's Interrogatory No. 5 requests Plaintiff to compute, itemize, and state

Plaintiff's damages under Coverage A of the policy on the residence.  Defendant's Exh.

AE.  Plaintiff's answer stated that the requested calculations were provided to

Nationwide in a report and analysis conducted by the National Fire Adjustment

Company, Inc., a professional fire loss adjuster service utilized by Shelley Kenneth,

Plaintiff's coinsured and then-wife, and which was marked as an exhibit for identification

at Shelley Kenneth's EUO pursuant to the policy, conducted July 30, 2001.  *Id.*

Nevertheless, as Plaintiff has agreed to provide Nationwide with these documents

should Nationwide require, Defendant's Exh. AE, Defendant's motion as to

Interrogatory No. 5 is GRANTED.

_____Interrogatory No. 6 requests Plaintiff to compute and itemize personal property

damages under Section C of the policy.  Defendant's Exh. AE.  Plaintiff's answer stated

that Nationwide is in possession of such information, pursuant to documents previously

---

[13]  All interrogatory references are to Defendant's First Set of Interrogatories.

provided to Nationwide by National Fire Adjustment Company, Inc., a professional fire insurance adjuster, in support of Shelley Kenneth's proof of loss.  *Id.*  As Plaintiff's answer to Interrogatory No. 6 indicates Plaintiff has access to this information, and Plaintiff does not object to providing such information based on over breadth or undue burdensomeness, Nationwide's motion as to Interrogatory No. 6 is GRANTED.

Interrogatory No. 8 requests that Plaintiff identify and itemize all expenses which Plaintiff paid to repair and replace portions of the damaged residence.  Defendant's Exh. AE.  Plaintiff objected to Interrogatory No. 8 on grounds that it is "extremely burdensome and unreasonable" to require Plaintiff to list all documents which support Plaintiff's claim for personal property loss, and further stated that Plaintiff had provided Nationwide with itemized expenses Plaintiff paid to repair or replace portions of the residence in Plaintiff's Fed.R.Civ.P. 26(A)(1) ("Rule 26(A)(1)") initial disclosures.  *Id.* As a threshold matter, it is unexplained why, in Plaintiff's answers to Defendant's First Set of Interrogatories, Plaintiff stated it would be unduly burdensome to provide Defendant with itemized repair and replacement costs to the residence Plaintiff paid when Plaintiff had no difficulty in providing, as Plaintiff represented, the information previously to Nationwide in Plaintiff's initial Rule 26(A)(1) disclosures.  Further, Plaintiff cannot rely on the generalized objection that Nationwide's interrogatories were "burdensome, oppressive, or overly broad."  *In re Priceline.com, Inc. Sec. Litig.,* 233 F.R.D. 83, 85 (D.Conn. 2005) (citing *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984) ("*Compagnie Francaise d'Assurance*")); *see also Burns, supra,* at 592-93.  Rather,

36

Plaintiff must explain "<u>specifically</u> how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant, or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Priceline.com, Inc. Securities Litigation* (quoting *Compagnie Francaise d'Assurance, supra,* at 42) (underlining added). As Plaintiff has provided no explanation, *e.g.*, affidavits, specifying how Nationwide's request, as stated in Interrogatory No. 8, for details regarding loss of Plaintiff's personal property is unduly burdensome, Nationwide's motion as to Interrogatory No. 8 is GRANTED.

Interrogatory No. 11 seeks particularization of debts and money owed by Plaintiff at the time the fire occurred. Defendant's Exh. AE. Plaintiff responded he could not provide such information because he was incarcerated and that, absent such incarceration, Plaintiff would still be unable to provide Nationwide with the requested information. *Id*; Grossman Affidavit ¶ 31. Plaintiff's response is unpersuasive. Plaintiff's incarceration occurred approximately five months after discovery had commenced in this action, during which time Plaintiff failed to submit answers and responses to Defendant's First Set of Interrogatories and Demand for Production of Documents, and Interrogatory No. 11 requests information regarding Plaintiff's personal finances as they were <u>prior to</u> the fire. Thus, Plaintiff's incarceration could not prevent Plaintiff from having personal knowledge sufficient to provide the requested information.

Defendant's Motion ¶ 33.[14]  Moreover, incarceration does not absolve a plaintiff of his duty to comply with the court's discovery orders.  *See Davidson v. Dean,* 204 F.R.D. 251, 255 (S.D.N.Y. 1990) (inmate sanctioned for noncompliance with discovery order). If the protective order in effect against Plaintiff hindered Plaintiff from obtaining documents containing the requested information needed to respond to Nationwide's First Set of Interrogatories and Document Production Request, because it prevented his access to the residence or communications with Shelley Kenneth, Plaintiff could have interposed such restrictions as a basis for not answering fully the Interrogatory or the related document request, which Plaintiff did not.  Further, were Plaintiff unable to provide Nationwide with the requested information, Plaintiff was required to state, under oath, that he was unable to provide the information and "set forth the efforts he used to obtain the information."  *Hansel v. Shell Oil Corp.,* 169 F.R.D. 303, 305 (E.D. Pa. 1996). As Plaintiff failed to describe the steps taken to obtain the requested information, Nationwide's motion directed to Interrogatory No. 11 is GRANTED.

Interrogatory No. 14 asks Plaintiff to identify occasions where Plaintiff allegedly violated orders of protection.  Defendant's Exh. AE.  In response, without otherwise objecting, Plaintiff refers Nationwide to Plaintiff's response to Interrogatory No. 12.  *Id.* However, Plaintiff's answer to Interrogatory No. 12 does not provide the information requested by Interrogatory No. 14, as Interrogatory No. 12 asks Plaintiff to identify orders of protection issued against Plaintiff, and not orders of protection Plaintiff

---

[14] Plaintiff's counsel states he believes Plaintiff resided outside New York state or was confined outside New York state when initial discovery demands were served in this case, and requests that the court permit Plaintiff to serve a sur-reply to verify the same.  Grossman Affidavit ¶¶ 33-34.  Based on the above analysis, the court finds such sur-reply unnecessary.

allegedly violated.  As such, Plaintiff's answer is unresponsive, and Nationwide's motion directed to Interrogatory No. 14 is GRANTED.

Interrogatory No. 17 requests Plaintiff identify those with whom he has gambled or placed bets.  Defendant's Exh. AE.  Plaintiff responded he was unable to respond with particularity, but acknowledged personal gambling debts owed to two individuals, totaling between $3,000 - $10,000.  *Id.*  "[I]f a party does not have the knowledge or information necessary to answer an interrogatory, it is sufficient to state such lack of knowledge as an answer, under oath."  *Brennan v. Glens Falls Nat. Bank & Trust Co.*, 1974 WL 301 at * 2 (S.D.N.Y. 1974).  Here, Plaintiff stated he was unable to respond with particularity to Interrogatory No. 17, but did not sign his answer, as required by Rule 33(b)(2).  Nevertheless, "[w]here the answer given is insufficient, the court may direct a further answer, . . . the matter resting in the discretion of the court."  27 C.J.S. Discovery § 66 (2007).  Accordingly, Defendant's motion directed to Interrogatory No. 17 is GRANTED and Plaintiff is ordered to state, under oath, why he was unable to provide the information or how he attempted to obtain such information but was unable to do so.  *Hansel,* 169 F.R.D. at 305.

Finally, Defendant's Interrogatory No. 18 requests Plaintiff to identify property insurance claims filed by him and his former wife, Shelley Kenneth, with other insurance companies prior to the Kenneths' insurance contract with Nationwide.  Defendant's Exh. AE.  Specifically, Nationwide requested Plaintiff identify the nature of the claims, the insurance company which handled the claims, the amount tendered as a result of the claims, if the claims were denied, the reasons for such claims' denial, and the approximate date(s) of any claimed losses.  *Id.*  In response, Plaintiff stated that

Plaintiff or Plaintiff's former wife, Shelley Kenneth, had previously filed a homeowner's insurance claim for ice damage to their residence's roof and interior walls. *Id.* However, Plaintiff represented in his answer to this Interrogatory that he was unaware of the insurance carrier's identity, but stated the month and year that the damage was sustained, as well as the approximate monetary amount of the settlement of the claim from the insurer. As with Plaintiff's responses to Interrogatories Nos. 11 and 17, Defendant's motion as to Interrogatory No. 18 is GRANTED, and Plaintiff is directed to state why he could not provide the requested information, and how he attempted to obtain such information. *Hansel,* 169 F.R.D. at 305.

In sum, while not without deficiencies, as discussed, Discussion, *supra,* at 31-39, Plaintiff's answers to Nationwide's interrogatories demonstrate substantial compliance with the court's order directing Plaintiff's responses to Defendant's First Set of Interrogatories and Request for Documents. As Rule 37(b)(2)(C), authorizing dismissal as a sanction, "contemplates only a serious and total failure to respond," *Flaks v. Kogel,* 504 F.2d 702, 706 (2d Cir. 1974) (citing 8 C. Wright & A. Miller, Federal Practice & Procedure § 2291, at 809-10 (1970)), not the failure to adequately respond to some interrogatories when a party has attempted to respond to all interrogatories, *id*., "[t]he insufficient submissions . . . are to be remedied by an application to the court for an order compelling complete discovery." *Id.* Although some of Plaintiff's responses to Nationwide's First Set of Interrogatories are incomplete or otherwise deficient, "a single pretrial violation" does not usually warrant a sanction tantamount to default judgment. *United States v. Aldeco,* 917 F.2d 689, 690 (2d Cir. 1990) (quoting *United States*

*Freight Co. v. Penn Central Transportation Co.,* 716 F.2d 954, 954 (2d Cir. 1983)).

Here, no pattern of repeated or wilful discovery violations by Plaintiff, or gross neglect

by Plaintiff's attorneys, has been established warranting the severe sanction of

dismissal.  Discussion, *supra,* at 24-33.  Rather, based on the record, treating

Defendant's motion as one to compel discovery, Plaintiff shall serve complete

responses to Nationwide's First Set of Interrogatories as directed in this Decision and

Order; Plaintiff's answers shall be properly signed and sworn to in accordance with Rule

33(b)(2).

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment or,

alternatively, to dismiss the Complaint (Doc. No. 15) is DENIED.  Treating Defendant's

motion to dismiss as a motion to compel, such motion is GRANTED in part and

DENIED in part.  Plaintiff is directed to serve answers to Defendant's Interrogatory Nos.

5, 6, 8, 11, 14, 17 and 18 of Defendant's First Set of Interrogatories, in accordance with

this Decision and Order, <u>within 10 days of service of this Decision and Order.</u>[15]  The

parties shall appear before the undersigned on **December 18, 2007 at 11:30 a.m.** to

schedule further proceedings including trial.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       November <u>13</u>, 2007
            Buffalo, New York

---

[15]  As the court has denied Defendant's motion for summary judgment, the court need not address Plaintiff's alternative request, Plaintiff's Memorandum at 11, that Plaintiff be granted additional time to submit more complete proof of loss statements to Nationwide.